JONES, JUDGE:
These claims arose from a collision which occurred on July 11, 1968, at approximately 8:45 a.m., while the claimant, Douglas T. Ellison, was driving his 1961 Chevrolet automobile in an easterly direction on United States Route 60 in Fayette County, and the claimant Aguilar’s 1966 Volkswagon automobile was stopped in a line of ten to twelve vehicles which had been flagged down by a Department of Highways employee. The Ellison automobile ran into the rear of the Aguilar automobile causing substantial damage to both vehicles, and the claimant Ellison sustained severe personal injuries. Claimant Ellison seeks damages in the amount of $100,000.00 and claimant Aguilar and his insurer, Nationwide Insurance Company, claim damages stipulated to be $1,360.66.
Upon agreement of the parties, these claims were consolidated for the purposes of hearing and while the legal principles involved are not identical, the facts are the same, and it appears to be proper and expedient further to consolidate the claims for the purposes of this opinion.
*265 Most of the facts surrounding these claims are undisputed, some are subject to question but are quickly resolved, and others present substantial conflicts which the Court will deal with. At the time of the accident, the respondent’s employees were pulling ditch lines on the north side of the highway, a process of grading and re-dressing shoulders to remove high or low places as well as to clean and re-open ditches. The grader used in the operation deposited substantial amounts of dirt and debris upon the highway in a sort of windrow and then would scrape the windrow back onto the shoulder, leveling and rebuilding the same. Quantities of dirt remained on the highway in the area of work, particularly in the north or westbound lane of traffic. A flagman was on duty and one-way traffic was maintained. The day was dry and clear and when the eastbound lane of traffic was stopped, there is little doubt that dust was raised from the road surface as westbound traffic proceeded along the highway. It appears that no sweeper, broom or sprinkling equipment was being used on the project. Except for such dust as may have been in the air there was no obstruction to claimant Ellison’s view from 600 to 800 feet before he reached the point where he struck claimant Aguilar’s vehicle.
Claimant Ellison contends that as he drove on the highway he was suddenly and completely enveloped in a cloud of dust which prevented his seeing anything, that he was unaware of the road work in progress, although he did testify at one point that “The only thing I could see was those road men working,” and he further testified that “all I did was slow up on the car and jump back in low gear and proceeded very cautiously into this cloud of dust.” Ellison saw no “men working” or other warning signs, and the several witnesses on both sides were about evenly divided as to whether such signs were in place. However, he did see “taillights”, presumably brake lights, on cars in front of him, but did not know whether they were stopped or not.
There is great conflict as to how much, if any, dust was raised by westbound traffic at the time of the collision. Claimant Aguilar testified that as he approached the line of cars stopped by the flagman, he had an unobstructed view of 600 to 800 feet, and that he could see the road work at that distance. *266 When asked what happened after his vehicle was stopped in the line of traffic, he gave this answer: “Well, I was standing .there and then in a split second I looked in the rearview mirror and I saw this car coming too fast. I heard the tires screeching and I began to lie down on the seat because I had the old-timey seats that did not have a back rest. It happened in a split second and then I was hit from the rear.” He further testified that he saw the Ellison car when it was 60 to 80 feet behind him, that his foot was on the brake at the time he was hit, that his car was stopped on a slight up-grade and that, when struck, the vehicle was thrown forward approximately a car length.
The claimants’ view of the case is that the respondent was negligent in failing to have in operation a highway broom, sweeper or watering truck, in failing to give proper warning, which is debatable, and in creating a sudden emergency by permitting such quantities of dust in the air that it diverted his attention and blurred his vision. However, some things are clear, and one is that Dr. Aguilar, against his own interest, testified that he could see the Ellison car coming too fast toward him when it was only 60 to 80 feet away, and that being true (and we have given full credit to Dr. Aguilar’s testimony), the Aguilar car and the line of traffic must have been visible at that time to the claimant Ellison. In our opinion it must follow that if the Ellison car had been under proper control, the collision would not have occurred and no one would have been injured. If there was negligence on the part of the State, it was not the proximate cause of this collision and the resultant damages, because the negligence of claimant Ellison became the intervening, independent proximate cause of the damages sustained by both claimants. Accordingly, the Court holds that this is not such a case as in equity and in good conscience should require compensation by the State, and the claims of Douglas T. Ellison, E. Belden Aguilar, and Nationwide Insurance Company, as subrogee, are all disallowed.